IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WILLIAM DEWAYNE BROOKS, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | CIVIL NO. JKB-25-0066 |
| APEX BUSINESS SOLUTIONS, LLC, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

Plaintiffs William Dewayne Brooks and LLL Venture, LLC ("LLL") filed suit against Defendants Apex Business Solutions, LLC ("Apex"), Juan Franzetti, and The Garland Company ("Garland"). (ECF No. 16.) Currently pending before the Court is Defendants' Motion to Dismiss. (ECF No. 17.) For the reasons that follow, the Motion to Dismiss will be denied.

### I. *Factual Background*

Brooks owns LLL, a corporation based in Virginia, and Franzetti owns Apex, a general contractor based in Maryland. (ECF No. 16 ¶¶ 1–3, 5.) Brooks alleges that, during the relevant period, he worked for Apex, which had been hired by Garland as a subcontractor. (*Id.* ¶ 8.)

Plaintiffs allege that, on October 29, 2020, Apex entered into a contract with LLL and Brooks (the "Contract"). (*Id.* ¶ 11.) Plaintiffs attach a copy of the Contract to the Amended Complaint. (*Id.* at 17–18.) The document is titled "Offer of employment from APEX Construction." (*Id.* at 17.) It provides that "[o]n behalf of the team at APEX Construction, it is our pleasure to extend to you this offer of employment. This offer is being made to Dewayne Brooks as a 1099 employee to LLL Venture, LLC." (*Id.*) It provides, *inter alia*, a position title,

start date, base salary, vehicle allowance, health insurance and cell phone stipends, and paid time off policy. (*Id.*) It also describes an Incentive Compensation Program as follows:

> Incentive Compensation Program: Commission eligible on all projects generated in annual sales with minimum margin of 10%
>
> > 1. If Project Margin is between 10-20% of the total project cost BONUS = 10% of margin
> > 2. If Project Margin is between 21-49% of the total project cost BONUS = 15% of margin
> > 3. If Project Margin is 50% or greater of the total project cost BONUS = 20% of margin
>
> .... Commissions to be paid out the first of the month following a completed, closed out and paid 100% by client [sic].

(*Id.* at 17–18.)

Plaintiffs allege that, for the next two and a half years, Brooks "worked effectively as a full-time employee of Apex, subject to the control and supervision of Mr. Franzetti and Apex." (*Id.* ¶ 19.) Brooks was "was treated at all times as an employee of Apex" despite the fact that the Contract referred to him as an independent contractor. (*Id.* ¶ 21–22.)

During the first year and a half of his employment, Brooks earned commissions on projects "as soon as a sale was made and the contract signed by the client." (*Id.* ¶ 28.) He was paid these commissions on the first of the month after the project was completed and fully paid by the client. (*Id.*) Around August 2022, Franzetti told Brooks "that the Flagler Palm Coast job loss would be deducted from the commissions that he earned from the Ballenger Creek Middle School job." (*Id.* ¶ 32.) This, Plaintiffs allege, deprived Brooks of the commission he earned from the Ballenger Creek job. (*Id.* ¶ 33.) Brooks lost out on another commission in September 2022, when Franzetti informed Brooks that Brooks' commission from the Reber Thomas Dining Hall would be withheld because of additional project costs incurred on another project, Eastern Hospital. (*Id.* ¶ 34.) This pattern has occurred on three additional projects. (*Id.* ¶ 37.) Plaintiffs allege that nothing in the contract allows for such set offs. (*Id.* ¶¶ 30–31, 35.)

Around June 30, 2023, Brooks emailed Apex to complain about the failure to pay him commissions. (*Id.* ¶ 38.) Brooks continued to complain over the next two months, until Apex and Franzetti terminated his employment "because of his repeated complaints about not receiving his earned commissions." (*Id.* ¶ 40.)

In addition to the five commissions that Apex allegedly withheld from Brooks during the period of his employment, Plaintiffs also identify "at least four additional [unpaid] commissions" that became due to Brooks after his termination. (*Id.* ¶ 44.) These commissions "became due upon the completion of Apex's work on projects that [Brooks] had handled and payment by the clients to Apex of the monies owed for the projects between October 2023 and March 2024." (*Id.* ¶ 44.) Plaintiffs allege that Brooks is owed $606,591 for these nine projects. (*Id.* ¶ 45.)

On the basis of these allegations, Plaintiffs bring three claims. Both Plaintiffs bring a breach of contract claim against Apex (Count I). And Brooks alone brings unpaid earned commissions/wages claims under the Maryland Wage Payment and Collection Law against Apex and Franzetti (Count II), and against Garland (Count III).

Defendants have filed a Motion to Dismiss. (ECF No. 17.) Defendant Apex also brought two counterclaims against Plaintiffs, one for intentional misrepresentation (Count I), and one for negligence (Count II). (ECF No. 12.) Plaintiffs filed an Answer to the counterclaims. (ECF No. 19.)

## II. *Motion to Dismiss*

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

3

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 446 U.S. at 662. A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

### III.   Analysis

Defendants move to dismiss the Amended Complaint. None of Defendants' arguments are availing, and the Court will deny the Motion.

First, the Defendants argue that the Contract serving as the basis of Plaintiffs' claims cannot simultaneously establish a contractual relationship between Defendants and LLL and an employment relationship between Defendants and Brooks. (ECF No. 17-1 at 4–6.) In short, Defendants argue that "[e]ither Plaintiffs were both independent contractors of Apex or Mr. Brooks was an employee of Apex – it *cannot* be both." (*Id.* at 6 (emphasis in original).) This will be an issue for a later stage of the litigation, but at this stage, Plaintiffs are permitted to plead in the alternative pursuant to the liberal federal pleading standards. *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.").

Defendants next argue that Plaintiffs fail to state a claim because Plaintiffs fail to allege that Defendants breached the terms of the Contract. Defendants argue that "Plaintiffs allege [the Contract] specified Mr. Brooks only earned a commission if a project achieved a 10% profit margin at the time it was fully completed, closed out, and paid by the client" and that "[d]espite these clear

4

terms, Plaintiffs *also* allege Mr. Brooks apparently 'earned his commissions as soon as a sale was made and the contract was signed by the client.'" (ECF No. 17-1 at 7 (emphasis in original).) Defendants also argue that the Contract is unambiguous. (*Id.* at 7–8.) However, the Court finds the Contract ambiguous. It provides the incentive compensation scale, and explains: "[c]ommissions *to be paid out* the first of the month following a[1] completed, closed out and paid 100% by client." (ECF No. 16 at 17–18 (emphasis added).) Contrary to Defendants' assertion, the Contract is silent on when a commission is earned (as opposed to paid). Perhaps the commission is earned and paid at the same time, but perhaps not. At this stage of the litigation, and with the briefing currently before the Court, the Court cannot conclude that, under the terms of the Contract, commissions are earned only after a project is fully completed, closed out and paid. Thus, this argument fails.

Defendants also argue that "[a]ccording to Plaintiffs, Defendants allegedly 'failed' to pay Mr. Brooks certain project commissions because those projects suffered losses or a lower-than-expected profit margin . . . . Based on the terms of the parties' contract as plead by Plaintiffs, it is not clear *how* this constitutes a breach." (ECF No. 17-1 at 8 (emphasis in original).) This misrepresents Plaintiffs' allegations. Plaintiffs do not allege that Defendants failed to pay Brooks commissions on projects that suffered losses; instead, Plaintiffs allege that Defendants failed to pay him the commissions he had earned on certain projects because *other projects* suffered losses.

Finally, Defendants argue that the Amended Complaint fails to establish how Plaintiffs determined that they are entitled to over $600,000 in commissions. However, Plaintiffs sufficiently allege that they earned commissions and that they were not paid, and the federal pleading rules require only that Plaintiffs provide "short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief sought, which may include relief

---

[1] Unhelpfully, the Contract includes various typographical errors, including one in this sentence.

5

in the alternative or different types of relief." Fed. R. Civ. Pr. 8(a). While Plaintiffs' Amended Complaint could have benefitted from additional information regarding the earned commissions, Plaintiffs have surmounted the relatively low hurdle at this stage, given that they allege that Plaintiffs had earned commissions, and that those commissions were reduced or withheld. (*See* ECF No. 16 ¶ 32 ("Mr. Brooks was informed by Defendant Franzetti that the Flagler Palm Coast job loss would be deducted from the commissions that he earned from the Ballenger Creek Middle School job"); *id.* ¶ 34 ("Mr. Brooks was informed that Defendant Franzetti was withholding his commission on another recently completed project, Reber Thomas Dining Hall, because of additional project costs incurred on a completely separate project, Eastern Hospital").)[2]

## IV.  Conclusion

For the foregoing reasons, it is ORDERED that Defendants' Motion to Dismiss (ECF No. 17) is DENIED.

DATED this 24 day of June, 2025.

BY THE COURT:

_____
James K. Bredar
United States District Judge

---

[2] Plaintiffs explain in their opposition that "Plaintiffs have alleged that Defendants falsely claimed that the specific projects at issue failed to achieve a 10% profit margin by improperly applying losses from different, unrelated projects to the specific projects at issue." (ECF No. 21 at 4.) Defendants respond by arguing that Plaintiffs have not met the fraud pleading standards. (ECF No. 22 at 4–5.) These are somewhat odd lines of argument on the part of both parties, given the Amended Complaint alleges that Defendants allegedly reduced Brooks' commissions on profitable projects because of losses incurred in unprofitable projects, not that Defendants "falsely claimed that the specific projects at issue failed to achieve a 10% profit margin." Nothing in the Amended Complaint raises allegations of fraud. In any event, Plaintiffs cannot amend a complaint through briefing, and both parties seem to miss the mark here.